**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

---

Barry Sewall, Shamika Gregory, Jerome Gregory, Frank Richmond, Michael McDermott, Kelley McDermott, Chance Gallo, Shelia Nasilasila, Erin Wise, Michael Curran, Christa Curran, Latrice Jones-Byrd, LaQuita Dasher, Ayoka Durham, Marcus Durham, Donna Sheard, Richard Allen, Gabrielle Todd, Gina Johnson, and Lionel Johnson each individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Home Partners Holdings LLC, OPVHHJV LLC, d/b/a Pathlight Property Management,

Defendants.

Court File No.: 1:25-cv-07849

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**FINAL FAIRNESS HEARING NOTED FOR DECEMBER 1, 2025**

---

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Summary of Settlement Terms ........ 3

- A. The Settlement Class ........ 3
- B. Monetary relief ........ 4
- C. Distribution and Claims Process ........ 4
- D. Injunctive Relief ........ 6
- E. Notice and Settlement Administration Costs ........ 7
- F. Release ........ 7
- G. Fees, Costs, and Expenses Award, and Service Awards ........ 8

II. Class Notice & Response ........ 8

ARGUMENT ........ 9

I. The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented. ........ 10

II. The Settlement Is Fair, Reasonable, and Adequate. ........ 12

- A. Adequacy of representation under Rule 23(e)(2)(A) is met. ........ 13
- B. The Settlement resulted from hard-fought arm's-length negotiation and experienced counsel recommend approval. ........ 14
- C. The Settlement Class will realize a significant benefit from the Settlement, which treats Settlement Class Members equitably relative to each other ........ 15
- D. The Settlement eliminates significant risk to Class Members facing complex, lengthy, expensive and uncertain litigation. ........ 17
- E. The response to the Settlement favors final approval. ........ 18
- F. The stage of the proceedings and amount of discovery supports final approval ........ 18
- G. The remaining Rule 23(e) factors counsel approval. ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ........ 15

*Bynum v. Dist. of Columbia*,
412 F. Supp. 2d 73 (D.D.C. 2006) ........ 18

*Charvat v. Valente*,
No. 12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ........ 17

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ........ 14

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........ 13, 14, 16

*Hobon v. Pizza Hut of S. Wisconsin, Inc.*,
No. 17-CV-947-SLC, 2019 WL 13217369 (W.D. Wis. Dec. 13, 2019) ........ 17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........ 9

*Izzio v. Century Golf Partners Mgmt., L.P.*,
No. 3:14-CV-03194-M, 2019 WL 10589568 (N.D. Tex. Feb. 13, 2019) ........ 20

*Lechuga v. Elite Eng'g, Inc.*,
559 F. Supp. 3d 736 (N.D. Ill. 2021) ........ 9

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir.1983) ........ 11

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ........ 11

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........ 11

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ........ 11, 12, 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ........ 13, 15

**Rules**

Fed. R. Civ. P. 23 .......... *passim*

**Other Authorities**

4 Newberg on Class Actions, § 13:43 .......... 14

4 Newberg on Class Actions, §§ 13:39.......... 10

## INTRODUCTION

Plaintiffs seek final approval of their class action Settlement with Defendants Home Partners Holdings LLC, and OPVHHJV LLC, d/b/a Pathlight Property Management.[1] The Settlement presented for approval provides a $34 million non-revisionary monetary common fund, with additional injunctive relief that directly addresses the concerns raised by Plaintiffs' claims—thus providing meaningful relief for the proposed multistate Settlement Class. The Court preliminarily approved the Settlement on July 31, 2025, after a hearing on Plaintiffs' unopposed motion. Doc. 24, Preliminary Approval Order. In granting preliminary approval, the Court found that the Settlement fell within the range of reasonableness and ordered notice be provided to the Class Members. *See* Doc. 24. The parties and EisnerAmper, the Court-appointed settlement administrator, executed the notice plan in accordance with the Preliminary Approval Order. Notice was disseminated to the Class via direct email or first-class mail. The reaction of the Settlement Class members has been overwhelmingly positive, with no objections received to date, and with only five requests for exclusion as of the time of this filing.

This process has confirmed that the notice plan was successful. The Settlement itself achieved an excellent result for the Settlement Class and satisfies all the criteria for final approval. The Court should enter an Order finding the Settlement fair, reasonable and adequate, grant final approval of the Settlement Agreement ("SA"), certify the multistate Settlement Class, and enter final judgment.

---

[1] All capitalized terms in this motion are defined in the Settlement Agreement (Doc. 4-1), unless a separate definition is provided herein.

## BACKGROUND

As set forth in Plaintiffs' brief in support of their unopposed motion for preliminary approval, the Settlement resolves the claims of a proposed Settlement Class of individuals who leased Home Partners-owned homes in 36 states. *See* Doc. 1, Class Action Complaint; Docs. 4 and 4-1. Plaintiffs' core claims allege that Defendants' form leases (1) include misleading and unenforceable provisions relating to certain of tenants' rights under state consumer protection and/or landlord-tenant laws, (2) unlawfully shift the burden of home maintenance and repair to tenants or disclaim the warranty of habitability, in violation of statutory or common law covenants of habitability, and (3) unlawfully charge certain property management and lease administration fees. Doc. 1, ¶¶ 1-10, 68-110. The Complaint asserts claims for damages, declaratory, and injunctive relief under state consumer protection and landlord-tenant statutes, including the Illinois Consumer Fraud Act; it also asserts state common law claims, including breach of good faith and fair dealing, unjust enrichment, and rescission. The Complaint also sought injunctive and declaratory relief. Joint Decl. ¶¶ 8-24.

The Settlement presented for approval resulted from over three years of hard-fought litigation that preceded the filing of Plaintiffs' Complaint in this District Court. As detailed in Class Counsel's declarations in support of preliminary and final approval, between March 3, 2022 and December 22, 2023, Class Counsel filed complaints on behalf of tenants in six states ("Class Action Matters"). *See* Doc. 7, Joint Declaration of Anne T. Regan, Scott C. Harris, and Joseph C. Bourne in Support

of Preliminary Approval of Settlement ("Joint Decl."), ¶¶ 8-24; *see also* SA § II; Doc. 1, Complaint, ¶¶ 213-20.

## I. Summary of Settlement Terms

### A. The Settlement Class

The Court preliminarily certified a Settlement Class defined as:

> All persons in every state and the District of Columbia in which Home Partners has leased homes during the applicable Settlement Class Period, who are or were parties to leases with Home Partners, or who are or were household members or occupants listed in such leases, and who occupied the home at any time during the applicable Settlement Class Period.

The Settlement Class Periods are:

- For Settlement Class Members in Minnesota homes: March 1, 2016 through the date of Preliminary Approval;
- For Settlement Class Members in Washington homes: September 21, 2016 through the date of Preliminary Approval;
- For Settlement Class Members in Colorado homes: May 1, 2017 through the date of Preliminary Approval; and
- For all other Settlement Class Members: December 22, 2019 through the date of Preliminary Approval.

Doc. 24, ¶. 3. Excluded from the Settlement Class are all persons who submit a timely and valid request to opt out of the Settlement; all persons who entered into a new lease (as opposed to a renewal) with Home Partners on or after January 10, 2025; all persons who are not of the age of majority at the time of Preliminary Approval; governmental entities; Defendants and any of their parents, affiliates, or subsidiaries; and the presiding judge in the Settlement Court or any of the Class Action Matters, including their immediate families and judicial staff. *Id.* ¶ 4.

### B. Monetary relief

Under the SA, Defendants will pay a maximum of $34 million for the benefit of all Settlement Class Members, in exchange for dismissal of the litigation with prejudice and the Release of plaintiffs' and class members' claims. SA, §§ III.C-D. If the Settlement is finally approved, none of the funds paid will revert to Defendants. The Settlement Fund will be distributed to the members of the Settlement Class according to the Distribution Plan, summarized below, net of payments for any Court-awarded Service Awards to the proposed Class Representatives, and Attorneys' Fees, Costs, and Expenses, including the expenses of the Administrator and costs of notice to the Settlement Class (the "Net Settlement Fund").

### C. Distribution and Claims Process

The Net Settlement Fund will be distributed to Settlement Class Members in the form of (1) Base Payments from the Net Settlement Remainder, and (2) Repair and Maintenance Cost Reimbursements. Payments will be calculated on a Lease Household basis. Each Lease Household will receive one payment ("Class Member Payment") that is the sum of any valid claim for Repair and Maintenance Cost Reimbursement and the automatic Base Payment. SA § V.A, E. Settlement Class Members may receive payment by check, unless they owe balances exceeding certain

specified amounts to Defendants. *Id.* §V.E.[2] The Class Member Payments will be distributed by the Settlement Administrator no later than 60 days after the Effective Date. SA §§ I.O, V.E.1.

***Repair and Maintenance Cost Reimbursement***. In the Class Action Matters, certain Plaintiffs alleged they or household members were required to make repairs to the homes they rented, which they contended were the responsibility of Defendants, and were not reimbursed. *See* Doc. 1, Class Action Complaint, ¶¶ 69-76, 132, 138, 146, 153-56, 163, 170, 176, 180, 188, 203, 212. Settlement Class Members who establish that they paid and were not reimbursed for repair and maintenance costs, or performed repair and maintenance work they contend was the responsibility of Defendants under the lease, may submit a claim with support as specified in the SA seeking reimbursement, which may not exceed $2,500 per Settlement Class Member and per Lease Household. *See* SA §§ V.A.2. Settlement Class Members who were previously compensated by Defendants for such repairs may not seek double recovery by submitting a claim for Repair and Maintenance Cost Reimbursement. *Id.* No Settlement Class Member or Lease Household may receive more than their actual, documented expenses or $2,500, whichever is less. *Id.*

[2] Current Residents may receive either a ledger credit ***or*** direct payment by check, unless they owe a balance of more than three times (3x) their current monthly base rent, in which case the Class Member Payment will be applied as a ledger credit. SA § V.E.2. Late-Term and Former Residents will receive their share of the Class Member Payment by check, unless they have an outstanding balance of more than three times (3x) their current monthly base rent (for Late-Term Residents) or one time (1x) their last applicable monthly base rent (for Former Residents) owed and that balance was not previously waived or forgiven by Defendants, in which case such Former and Late-Term tenants will have their share deducted from the amount they owe Defendants. *Id.* § V.E.3.

As of October 13, 2025, 749 claims for Repair and Maintenance Cost Reimbursement have been submitted to the Settlement Administrator, EAG. Declaration of Blake Ross, ¶ 19, Table 2 ("Ross Decl."). The total amount claimed to date is $1,140,451.51. *Id.* at ¶ 19. Settlement Class Members have until October 27, 2025, to submit claims. Based on the current data, the total amount of approved claims will not exceed the $7,500,000 maximum set by the Settlement Agreement. Accordingly, the remainder will be added to the Net Settlement Fund and distributed to Class Members in the form of Base Payments. *See* SA §§ V.A.2.

***Base Payments***. Once the Net Settlement Remainder is determined, every Settlement Class Member will receive a Base Payment share, calculated as the Lease Household's *pro rata* share of the total monthly base rent paid by all its Settlement Class Members through the date of preliminary approval. SA § V.A.1. No claim form needs to be submitted. *Id.*; *see also* SA Exs. B, C.

**D. Injunctive Relief**

During the pendency of the Class Action Matters, Defendants changed their policies and practices with respect to charging certain fees that Plaintiffs contended were illegal under the respective states' laws. Doc. 1, ¶¶ 103-04 (describing change in practices to charging of HVAC filter and UBSF fees). Specifically, Defendants made both an HVAC filter replacement program and a utility billing service optional, so that the Settlement Class Members could choose to pay the extra fees associated with these programs. *Id.* This resulted in significant savings to those Settlement Class Members who preferred to set up their own utilities or to purchase HVAC filters on their own. *Id.*

In addition, as part of the Settlement, Home Partners agrees to clearly and conspicuously disclose on the initial pages of any new residential lease (or similar summary form), all mandatory and optional fees a tenant may incur (the "Key Provisions Summary"). SA § III.F. Similarly, in any Home Partners' direct advertising of the rental prices of its properties, Home Partners agrees to state the total fixed or mandatory monthly rental cost, including "Monthly Base Rent" and "Additional Rent," a resident may incur in leasing a Home Partners' property. *Id.*

### E. Notice and Settlement Administration Costs

All Class Notice and Settlement Administration Costs will be paid from the Settlement Fund. *Id.* §§ I.S, III.D.2. This includes costs incurred to date for sending direct notice, CAFA notice, claims processing, and answering Settlement Class Member queries, in addition to anticipated future costs for establishment of the Qualified Settlement Fund, additional claims processing, Settlement Payment calculation, and distribution of checks by first class mail. Regan Decl. ¶ 36.

### F. Release

In exchange for the relief afforded by the Settlement, the Released Parties will receive a full release of all Released Claims "that were or could have been asserted in the Class Action Matters or that are based on the same factual predicate of the Class Action Matters," including "claims that in any way relate to the Settlement Class Members' leases, tenancies, occupancies, rent, fees, or other charges assessed by Home Partners or paid by the Settlement Class Members pursuant to the leases, and any claims related to the repair and maintenance of the leased properties." SA § III.C. The Release excepts "personal injury claims; claims against debt collectors for

violations of the Fair Debt Collection Practices Act, Fair Credit Reporting Act, and similar state laws; claims related to alleged habitability issues that occur after the Settlement Class Period; and claims related to alleged habitability issues that occur during the Settlement Class Period and which have been asserted or are being litigated by Settlement Class Members in the context of pending formal Tenant Remedies actions, Rent Escrow actions or Eviction actions, through the Effective Date." *Id.* The Release accounts for the nature of the landlord-tenant relationship between Class Members and Defendants, covering claims that were or could have been asserted or are based on the alleged facts in the Class Action Matters, through the date of preliminary approval. *Id.*

### G. Fees, Costs, and Expenses Award, and Service Awards

The Settlement Agreement permits Plaintiffs' counsel to apply to the Court for a portion of the Settlement Fund as payment of any reasonable attorneys' fees, costs, and expenses, including Settlement administration expenses. SA § I.S, III.D.2. Class Counsel will file their separate motion for approval of these requests concurrently with this Motion.

## II. Class Notice & Response

Class members were notified through a program led by a highly experienced, well-regarded third-party administrator, EisnerAmper (a.k.a. "EAG"), by the methods ordered by the Court after provisional certification of the Settlement Class and approval of the Class Notice. Doc. 24; Doc. 4-1, Exs. A-D. Direct email notice was sent to all Settlement Class Members who provided Defendants with their email addresses. SA § IV.B-D; Ross Decl. ¶¶ 7-9. Those without email addresses or whose

addresses bounced back were notified by first class mail. *Id.* Using information obtained from Defendants, EAG emailed 178,633 electronic notices to potential Settlement Class Members and mailed 9,293 postcard notices. Ross Decl. ¶ 17.[3] In addition, EAG continues to maintain the case website, where Class members can view and print important documents and obtain other information related to the litigation. *See id.* ¶ 14.

Settlement Class members have until October 27, 2025, to file claims for Repair and Maintenance Cost Reimbursement. Settlement Class members have until October 20, 2025, to submit objections or to request exclusion. The Settlement Administrator has received five requests for exclusion. No objections have been received. *Id.* ¶¶ 20-21.

## ARGUMENT

The proposed Settlement readily meets the Seventh Circuit's standards for the final approval of class action settlements. "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (internal citations omitted). Any dismissal, compromise, or settlement of a class action is subject to court approval. Fed. R. Civ. P. 23(e). The approval process generally proceeds in three stages: first,

[3] As explained in the Ross Declaration, notices were sent to each person listed on a lease, at the email addresses provided for that person. Many persons who received the notice were likely minors, and therefore are not Settlement Class Members.

the court must conditionally certify a settlement class and grant preliminary approval of the proposed settlement and order that notice be disseminated, scrutinizing the proposed settlement for whether it is "fair, reasonable, and adequate" and likely to be finally approved, Fed. R. Civ. P. 23(e)(2); next, notice as approved by the court is sent to the potential class members; and finally, the court holds a fairness hearing at which class members may be heard regarding the settlement, and counsel may present evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(d), (e)(2); 4 Newberg on Class Actions, §§ 13:39, *et seq*. Final Judicial Approval of Proposed Class Action Settlements (5th ed.). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See id.*

The first and second stage of the approval process—including the front-loaded scrutiny of the Settlement required by Rule 23 and approval of class notice—have occurred. Plaintiffs now respectfully request that the Court grant final approval of the Settlement.

## I. The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented.

The Court-approved Notice Plan has been successfully implemented, and Class members have been notified of the Settlement. "Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.' What comprises the best notice possible depends on various elements, including the size of

the class, whether the class members can be easily identified, and the probability notice will reach the intended audience." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) (citations omitted).[4] A settlement notice need only provide a summary of information about the settlement; it is not itself a complete source of information. *See, e.g.*, *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001) (citing *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1153 (8th Cir. 1999) and *Maher v. Zapata Corp.,* 714 F.2d 436, 452 (5th Cir.1983)).

The Class Notice and notice program approved by this Court, Doc. 24, relies on direct notice to Settlement Class Members, supplemented by a web site that provides important documents related to this litigation and the Settlement, as well as the Settlement Agreement itself. The email, postcard, and long-form notices provide a concise, plain English description of the nature of the action and the Settlement terms. *See* Ross Decl. Exs. B-C. The notices provide a clear description of who is a member of the Settlement Class and how to contact Settlement Class counsel. The notices informed members of relevant terms, including the amount of consideration Defendants will fund and the maximum amount of attorneys' fees, costs, and service awards Plaintiffs might seek by October 14, 2025. EAG also continues to maintain a toll-free call-in number to answer Settlement Class Members' questions. *Id.* ¶ 15. The

[4] The information required to be summarized is: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The Class Notice approved by the Court included all of the information required by Rule 23(c)(2)(B).

Notices also informed Settlement Class Members of their right to opt out or object, the terms and scope of the Release, and the binding nature of the Settlement. The content of the Court-approved notices therefore complies with Rule 23(c)(2)(B).

The reach of the notice program also confirms that the Settlement Class Members' constitutional due process rights to be notified of the Settlement were well-guarded. *Schulte*, 805 F. Supp. 2d at 596. As stated above, notice reached 179,440 potential Settlement Class Members via email and mailed postcard notices. Ross Decl. ¶ 17. In addition, EAG continues to maintain the case website, where Class members can view and print important documents and obtain other information related to the litigation. *See id.* ¶ 14.

To date, EAG has reviewed and processed five (5) requests for exclusion. *Id.* ¶ 20. This process included determining the timeliness and validity of any requests for exclusion, identifying the persons who fell within the scope of valid requests for exclusion, conducting appropriate follow-ups with requested opt-outs, and assisting the parties in determining the opt-out calculations. *See id.* Plaintiffs will file a final list of valid opt outs no later than 14 days before the final fairness hearing so that the Court may include all valid opt outs in any order finally approving the Settlement.

The Notice given to the Settlement Class complies fully with Rule 23, satisfies all constitutional due process considerations, and provides the Court with jurisdiction over the Settlement Class Members.

## II. The Settlement Is Fair, Reasonable, and Adequate.

A district court may grant final approval of a settlement if it is "fair, reasonable, and adequate" after consideration of the factors identified in Federal Rule

of Civil Procedure 23(e)(2).[5] The factors in Rule 23(e)(2) "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

In granting preliminary approval of the Settlement, the Court found that nearly all of these factors were satisfied (*see* Doc. 24), but at that time Settlement Class Members themselves had yet to weigh in. Now that Class Members have received notice and an opportunity to be heard, their reaction has been overwhelmingly favorable. Thus, each of these factors support granting final approval of the Settlement, which were the product of hard-fought litigation and extensive arm's-length negotiations.

### A. Adequacy of representation under Rule 23(e)(2)(A) is met.

In granting preliminary approval to the Settlement, the Court previously concluded that the Class Representatives and Class Counsel were adequate. Doc. 24.

---

[5] These factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

This remains true as the Class Representatives have no conflicts of interest with other Settlement Class Members, and they have invested significant time in the Class Action Matters. Joint Decl. ¶¶ 9, 11, 14, 18-23; Declaration of Anne T. Regan, ¶ 37. Class Counsel also have extensive experience in prosecuting class actions and various complex cases, Joint Decl. Exs. 2-4, and have litigated this case intensively, and successfully, for nearly four years. Adequacy of representation is uncontested and favors approval.

### B. The Settlement resulted from hard-fought arm's-length negotiation and experienced counsel recommend approval.

"A strong presumption of fairness attaches to a settlement agreement when it is the result of… [arm's length] negotiation" *Hale*, 2018 WL 6606079, at *3 (citing *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002)); *see also* 4 Newberg on Class Actions, § 13:43 Presumptions Governing Approval Process—Generally (5th ed.).

The Settlement here was negotiated at arm's length, with the assistance of the Honorable Sidney Schenkier (ret.) of JAMS. The Parties conducted an all-day mediation on December 5, 2024, and reached an agreement in principle. Joint Declaration of Class Counsel, ¶ 28. The Settlement Agreement was thereafter negotiated by experienced Class Counsel and counsel at Kirkland & Ellis LLP and Faegre Drinker Biddle & Reath LLP, in further consultation with Judge Schenkier. The parties reached that agreement on a solid understanding of the merits and risks of litigation developed after years of hard-fought litigation. *Id.* ¶¶ 25-29. This factor favors approval.

Moreover, it is well established that the judgment and opinion of experienced and competent counsel should be considered when assessing whether a settlement is fair, reasonable and adequate. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel"). Therefore, the endorsement of the Settlement by Class Counsel is yet another factor that supports final approval.

### C. The Settlement Class will realize a significant benefit from the Settlement, which treats Settlement Class Members equitably relative to each other.

"The most important factor relevant to the fairness of a class action settlement is … the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (cleaned up). While Plaintiffs believe strongly in the merits of their claims, the Settlement will yield significant benefits to the Settlement Class now, and Defendants have potentially strong defenses to both liability and damages at trial. This factor supports approval.

The consideration from Defendants, up to $34 million in a non-reversionary common fund, and significant injunctive relief, provides considerable benefits to the Settlement Class. The plan of Distribution ensures that all Class Members receive a *pro rata* Base Payment from the Net Settlement Fund, irrespective of whether they file a claim for an additional Repair and Maintenance Cost Reimbursement of up to $2,500. *See Hale*, 2018 WL 6606079, at *5 (granting final approval to settlement

where 1.4 million class members did not have to file a claim and remainder were subject to a claim process that was "claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case"). Similar to data breach and privacy settlements, Class Members were provided the opportunity to submit a claim for unreimbursed repair and maintenance costs they performed or paid others to perform, and contend were Defendants' responsibility. SA § V.A.2. As of the date of this filing, 749 Settlement Class Members have made a total in $1,140,451.51 claims for out-of-pocket expenses or for time spent on repairs. Ross Decl. ¶¶18-19. The amount allocated for Repair and Maintenance Cost Reimbursement, $7.5 million, will not likely be exhausted after the claims submission deadline of October 27, 2025. As a result, the Net Settlement Remainder—and the amount that can be distributed automatically as Base Payments to Settlement Class Members—will be increased. SA § V.A.2.

Where, as here, a settlement provides class members with an equal or pro rata share of a settlement fund, and the Plaintiffs have taken steps to ensure that settlement funds are distributed in a manner to maximize payment to every class member, a settlement should be approved. *See Hobon v. Pizza Hut of S. Wisconsin, Inc.*, No. 17-CV-947-SLC, 2019 WL 13217369, at *2 (W.D. Wis. Dec. 13, 2019) (granting final approval to settlement where class members received pro rata allocation of settlement fund); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) (class counsel decision to cap recovery for each class member ensured that every claimant had "best possible payout"). The non-

monetary and monetary benefits to the Settlement Class provide valuable relief. The Settlement constitutes an excellent result for the Settlement Class and should be granted final approval by the Court.

### D. The Settlement eliminates significant risk to Class Members facing complex, lengthy, expensive and uncertain litigation.

The Settlement also eliminates the risks and years of delay that Plaintiffs would face if the Class Action Matters had proceeded to trial or appeal. Joint Decl. ¶¶ 8-16. As reflected in Settlement Class Counsel's declaration, *id.*, in reaching this Settlement, Plaintiffs faced concrete litigation risks stemming from dismissal of their claims, in whole or part, in the United States District Courts for the Western District of Washington, the District of Maryland, and the Southern District of Illinois; an active appeal before the Colorado Supreme Court, which was originally scheduled for oral argument on January 14, 2025; and denial of cross-motions for summary judgment in the Minnesota state district court approximately 60 days before trial in that matter. Absent settlement, Plaintiffs would have needed to proceed to trial with the burden of establishing liability and damages in Minnesota, submit to an extended appeals processes in the Fourth and Ninth Circuits, as well as Colorado, and engage in further motion practice or post-trial briefing in the other district courts. No decision on Defendant's motion to dismiss in the Georgia matter had yet been issued, presenting more uncertainty. Some of the claims presented issues of first impression in these respective states, such as in Colorado, where the federal district court certified claims to the Colorado Supreme Court. *See Curran*, Docs. 44, 50, No. 1:23-

cv-01279 (D. Colo.). Additionally, both Plaintiffs and Defendants likely would have exhausted their appellate rights in the Class Action Matters.

### E. The response to the Settlement favors final approval.

The reaction of the Settlement Class Members overwhelmingly supports final approval. More than 179,440 notices were sent directly to potential Settlement Class Members, which was in addition to the Settlement Administrator maintaining an information website and toll-free number to call. Ross Decl. ¶ 17. To date, no Settlement Class Members have objected. And only five (5) members have opted out. *Id.* ¶¶ 20-21. The response of the Class demonstrates that the Settlement is fair, reasonable, and adequate. *See Schulte*, 805 F. Supp. 2d at 586 ("A very small percentage of affected parties have opposed the settlement…. only 342 [of more than 100,000] Class Members excluded themselves from the settlement and only 15 Class Members submitted documents that could be considered objections."); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members.").

### F. The stage of the proceedings and amount of discovery supports final approval.

The stage of the underlying Class Action Matters, which were pending for some time, strongly supports granting final approval to the Settlement. Namely, the Settlement was entered before trial on the merits in *Sewall* (Minnesota) and *Richmond* (Washington), the hearing before the Colorado Supreme Court in *Curran*, and before a ruling on Defendant's motion to dismiss in the *Jones-Byrd* (Georgia)

matter. While Plaintiffs are confident in their cases, each of these important hurdles present time, expense, and risk.

Moreover, the amount of discovery and the investigation performed before the Settlement was entered ensured that Plaintiffs and their counsel made informed decisions to approve and recommend the Settlement to the Settlement Class and the Court. Joint Decl. ¶¶ 25-29. The Settlement was entered into after Plaintiffs had the opportunity to take or defend the depositions of over two dozen witnesses, analyze over 100,000 documents, engage in extensive written discovery, and retain well-qualified expert witnesses in consumer perceptions and behavior and computing economic damages. *See id.*; *see also* Declaration of Anne T. Regan, ¶¶ 4-30. Therefore, the procedural posture and status of the case supports granting final approval to the Settlement.

### G. The remaining Rule 23(e) factors counsel approval.

Finally, the Court should consider "(iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). These factors, too, weigh in favor of final approval.

First, Plaintiffs have filed a separate motion in connection with their request for attorneys' fees. The Settlement does not have any "clear sailing" or "kicker" provisions, which can require additional scrutiny of settlements and associated fee requests. Further, Plaintiffs agreed that a reduction in Class Counsel's fee request "will not be a basis to nullify or terminate the Settlement." SA § III(B)(2).

Second, as for Rule 23(e)(3), requiring the parties to file agreements made in connection with the proposed settlement, "[t]his requirement does not concern disclosure of the basic terms of the settlement; '[i]t aims instead to related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others.'" *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-CV-03194-M, 2019 WL 10589568, at *8 (N.D. Tex. Feb. 13, 2019), *aff'd*, 787 F. App'x 242 (5th Cir. 2019) (internal citation omitted). "The spirit of [Rule 23(e)(3)] is to compel identification of any agreement or understanding, written or oral, that might have affected the interests of class members by altering what they may be receiving or foregoing." *Id.* (cleaned up). The Supplemental Agreement identified as Exhibit 1 to Class Counsel's Joint Declaration (Doc. 7-1), which was filed in part under seal, concerns Defendants' right, but not obligation, to terminate the Settlement if a certain threshold of Class Members opt out. As of the date of this filing, that threshold will not be met here. This factor favors final approval.

## CONCLUSION

This $34 million plus injunctive relief settlement provides an excellent result for the Settlement Class. The Court should grant final approval of the Settlement Agreement.

Respectfully submitted,

Date: October 14, 2025

By: */s/Anne T. Regan*

Anne T. Regan (IL #6280977)
Neven Selimovic
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, MN 55439
(952) 941-4005
aregan@hjlawfirm.com
nselimovic@hjawfirm.com

Gary Klinger (IL #6303726)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(865) 247-0080
gklinger@milberg.com

Scott Harris
**BRYSON HARRIS SUCIU & DEMAY, PLLC**
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5000
sharris@brysonpllc.com

Joseph C. Bourne
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
(612) 339-6900
jcbourne@locklaw.com

**ATTORNEYS FOR PLAINTIFFS**